UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-1360 JGB (SPx)** | Date | October 17, 2014 |
|---|---|---|---|

Title  *M'Bili Langston, et al. v. 20/20 Companies, Inc., et al.*

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiffs' Motion to Remand (Doc. No. 14); (2) GRANTING Defendant's Motion to Compel Arbitration (Doc. No. 18); (3) DENYING AS MOOT Defendant's Motion to Transfer Venue (Doc. No. 16); and (4) VACATING the October 20, 2014, Hearing (IN CHAMBERS)

Before the Court are Plaintiffs' Motion to Remand, (Doc. No. 14), as well as a Motion to Transfer Venue, (Doc. No. 16), and a Motion to Compel Arbitration, (Doc. No. 18), both of which were filed by Defendant 20/20 Communications, Inc. ("Defendant" or "20/20 Communications"). The Court finds this matter appropriate for resolution without a hearing. See Local Rule 7-15; Fed. R. Civ. P. 78. After considering the papers filed in support of and in opposition to the motions, the Court DENIES the Motion to Remand, GRANTS the Motion to Compel Arbitration, DENIES AS MOOT the Motion to Transfer Venue, and VACATES the October 20, 2014, hearing.

## I.   BACKGROUND

### A. Procedural History

On April 8, 2014, Plaintiffs M'Bili Langston, et al. ("Plaintiffs") filed a putative class action Complaint in state court against Defendants 20/20 Companies, Inc.,[1] 20/20 Communications, Inc., and fictitious entities. (Compl., Doc. No. 1, Ex. A). The Complaint alleges eight causes of action, including numerous violations of the California Labor Code. (Id.). Specifically the Complaint asserts violations of (1) Cal. Labor Code §§ 510 and 1194, (2) Cal.

---

[1] Defendant 20/20 Communications, Inc., explains that 20/20 Companies, Inc., "was erroneously named as a separate corporate entity in the Complaint." (Answer, Doc. No. 1-2).

Labor Code § 221, (3) Cal. Labor Code § 203, (4) Cal. Labor Code § 226, (5) Cal. Labor Code § 226.8, (6) Cal. Labor Code § 2802, (7) Cal. Labor Code § 226.7, and (8) Bus. & Prof. Code § 17200. (Id.). Plaintiffs are sales representatives who generally allege that Defendants improperly classified them as independent contractors, as opposed to employees, and denied them proper wages. (Id.). In addition to their other prayers for relief, with respect to their fifth and seventh causes of action, Plaintiffs seek civil penalties, pursuant to the California Labor Code Private Attorney General Act of 2004 ("PAGA"), specifically Labor Code § 2699. (Id. at 10-11).

On April 11, 2014, Plaintiffs mailed a copy of the summons and complaint to CSC Lawyers Incorporating Service ("CSC Lawyers"), Defendant 20/20 Communication's registered agent for service of process, along with a notice and acknowledgement of receipt form. (Rose Decl., Doc. No. 14-1 at 1). On May 15, 2014, Plaintiffs again mailed a copy of the summons and complaint to CSC Lawyers, along with another notice and acknowledgment of receipt form (the "Acknowledgment"). (Rose Decl, Ex. C at 1). Defendant signed the Acknowledgment on June 4, 2014. (Id.). On July 3, 2014, Defendant filed an Answer in state court. (Answer, Doc. No. 1-2). That same day, Defendant removed the action to this Court. (Not. of Removal, Doc. No. 1).

On August, 6, 2014, Plaintiffs filed a Motion to Remand the action to state court. ("MTR," Doc. No. 14). Defendant opposed the Motion to Remand on August 18, 2014. ("MTR Opp'n," Doc. No. 15). Plaintiffs replied on August 25, 2014. ("MTR Reply," Doc. No. 17).

On August 25, 2014, Defendant filed a Motion to Transfer Venue, seeking to transfer this action to the Northern District of Texas. ("MTT," Doc. No. 16). Defendant also filed a Motion to Compel Arbitration on August 29, 2014. ("MTC" Doc. No. 18).[2] On September 8, 2014, Plaintiffs filed their oppositions to the Motion to Transfer, ("MTT Opp'n," Doc. No. 21), and the Motion to Compel, ("MTC Opp'n," Doc. No. 22). On September 15, 2014, Defendant replied with regard to both the Motion to Transfer, ("MTT Reply," Doc. No. 23), and the Motion to Compel, ("MTC Reply," Doc. No. 24).

## II. MOTION TO REMAND

### A. Legal Standard[3]

Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. Exxon Mobil Corp. v. Allapattah Servs.,

---

[2] Defendant requested judicial notice of one document in support of its Motion to Compel Arbitration. ("MTC RJN," Doc. No. 18-2). Because the Court does not rely on this document to resolve the Motion to Compel Arbitration, it DENIES AS MOOT the requests for judicial notice filed by Defendant. See In re Immune Response Sec. Litig., 375 F. Supp. 2d 983, 996 (S.D. Cal. 2005).

[3] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

Inc., 545 U.S. 546, 553 (2005). To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (internal citations omitted).

   B. Discussion

Plaintiffs move to remand, pursuant to 28 U.S.C. § 1447(c), on the basis that Defendant's Notice of Removal was not timely filed. (MTR at 3). They contend that, on April 11, 2014, they served their complaint via mail to Defendant's registered agent for service of process, CSC Lawyers Incorporating Service. (Id.). They argue that service was completed on that date, even if the agent did not sign and return the notice and acknowledgment of receipt (the "Acknowledgment"). (Id. at 4). They assert that the agent for service was required to accept service that arrives by mail along with an Acknowledgment. (Id. at 3). Moreover, they argue that, by transmitting the complaint to Defendant, the agent accepted service despite failing to sign the Acknowledgement. (Id. at 4).

In response, Defendant asserts that service was not properly completed until Defendant's counsel signed the Acknowledgement on June 4, 2014. (MTR Opp'n at 3). Thus Defendant argues that the Notice of Removal was filed twenty-nine days after service was completed. (MTR Opp'n at 1).

The timeliness of removal is governed by 28 U.S.C. § 1446(b), which provides as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based .
> . . .
>
> . . . .
>
> (3) [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b).

In California, "service by mail" is governed by California Code of Civil Procedure § 415.30, which requires that a summons be accompanied by two copies of a "notice and

acknowledgment" of receipt. See Cal. Code Civ. Proc. § 415.30(a). That section of the code further provides as follows:

> (c) Service of a summons pursuant to this section is deemed complete <u>on the date a written acknowledgment of receipt of summons is executed, if such acknowledgement thereafter is returned to the sender</u>.
>
> (d) If the person to whom a copy of the summons and of the complaint are mailed pursuant to this section fails to complete and return the acknowledgment form . . . within 20 days from the date of such mailing, the party to whom the summons was mailed shall be liable for reasonable expenses thereafter incurred in serving or attempting to serve the party by another method permitted by this chapter . . . .

Cal. Code Civ. Proc. § 415.30. Thus service by mail is not complete until the recipient signs the acknowledgment of receipt and thereafter returns it to the sender. See id.; Cal. Civ. Code Proc. § 415.30 jud. council cmt. California courts have clarified that the section "expressly predicates the efficacy of such service upon the execution and return of an acknowledgment of service," and have further explained that, "[i]f the party addressed fails to do so, there is no effective service, he merely becomes liable for the reasonable expenses of service in a more conventional manner." Thierfeldt v. Marin Hosp. Dist., 110 Cal. Rptr. 791, 800 (Cal. Ct. App. 1974). Therefore, service was not complete until Defendant's agent signed the Acknowledgment on June 4, 2014. (Acknowledgment, Doc. No. 1, Ex. C).

Defendant filed its Notice of Removal on July 3, 2014, which was twenty-nine days after service was completed on June 4, 2014. Therefore, removal was timely, and the Court DENIES Plaintiff's Motion to Remand.

### III. MOTION TO COMPEL ARBITRATION

Defendant seeks to compel arbitration, arguing that Plaintiffs signed Mutual Arbitration Agreements ("MAAs") that require their employment claims to be resolved through arbitration. (MTC at 1). Defendant contends that each Plaintiff executed the MAA upon commencing work as a sales representative for Defendant. (Id.). The MAA includes broad language that requires all disputes between Defendant and sales representatives to be resolved through arbitration. (Id.). The MAA also prohibits the consolidation of claims into class or representative actions, instead requiring that all claims be individually arbitrated. (Id.).

Plaintiffs do not dispute Defendant's contention that the MAA encompasses the claims pled in the operative complaint. Instead, Plaintiffs respond that (1) Defendant has not properly authenticated Plaintiffs' signatures on the MAA, (MTC Opp'n at 9); (2) the MAA is not subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., because the employment contract does not involve interstate commerce, (id. at 3); and (3) representative PAGA claims cannot be waived through an arbitration agreement, (id. at 6).

### A. Legal Standard

"Arbitration is a matter of contract, and the [Federal Arbitration Act ("FAA")] requires courts to honor parties' expectations." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1752 (2011). "Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008). Thus, if the FAA applies to a contract, courts must direct parties to arbitrate disputes involving issues that fall within an arbitration agreement. See id. Thus, a party seeking to compel arbitration under the FAA has the burden to demonstrate (1) the existence of a valid, written agreement to arbitrate in a contract; and (2) that the agreement to arbitrate encompasses the dispute at issue. See Cox, 533 F.3d at 1119; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); see also 9 U.S.C. § 2.

### B. Discussion

Defendant seeks to compel arbitration. Thus, if the FAA governs the interpretation of the employment contract, Defendant must demonstrate that (1) a valid, written agreement to arbitrate exists, and (2) the arbitration agreement applies to Plaintiffs' claims. See Cox, 533 F.3d at 1119.

Plaintiffs do not dispute Defendant's contention that the MAA encompasses the claims pled in the operative complaint. Instead, Plaintiffs respond that (1) the MAA is not subject to the FAA because the employment contract does not involve interstate commerce, (MTC Opp'n at 3); (2) Defendant has not properly authenticated Plaintiffs' signatures on the MAA, (id. at 9); and (3) representative PAGA claims cannot be waived through an arbitration agreement, (id. at 6).

#### 1. Application of the FAA

Plaintiffs argue that the FAA does not govern this Court's interpretation of the MAA because the employment contract did not involve interstate commerce. (MTC Opp'n at 3-4). The FAA applies where there exists "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" indicates Congress' "intent to exercise [its] commerce power to the full." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273 (1995).

To support its assertion that the employment contract involved sufficient commerce, Defendant provides the Declaration of Chian Burks, Defendant's Director of Human Resources. ("Burks Decl.," Doc. No. 18-4). Burks explains that Defendant is headquartered in Texas and "engages door-to-door sales representatives in multiple states, including but not limited to California." (Id. ¶¶ 1-2). Moreover, Plaintiffs' duties included "sell[ing] wireless and telecommunications services offered by national providers such as Verizon to residential customers." (Id. ¶ 3).

The employment contract between Plaintiffs and Defendant thus appears to evidence a transaction involving at least as much commerce as was involved in cases before the U.S. Supreme Court, in which that Court applied the FAA. For example, the Supreme Court has held that sufficient commerce was evidenced by a termite-prevention contract between a homeowner

and a "multistate" exterminator company that involved termite-treating materials that came from outside the state. Id. at 268, 282. Regarding employment contracts, the Supreme Court has explained that, in general, "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). Moreover, the Supreme Court specifically applied the FAA to an employment contract between "a national retailer of consumer electronics" and an employee in one of that retailer's stores. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001).

Therefore, the Court holds that the contract at issue in this case involved commerce and the FAA governs interpretation of the MAA.

### 2. Existence of Valid Arbitration Agreement

Defendant asserts that a valid arbitration agreement exists. (MTC at 1). However, Plaintiffs raise two arguments with respect to the validity of the MAA. First, they contend that Defendant has not demonstrated that each Plaintiff signed the MAA. (MTC Opp'n at 9-10). Second, they assert that the MAA is unconscionable with respect to their PAGA claims and therefore cannot be used to compel Plaintiffs to arbitrate those claims. (MTC Opp'n at 6-8).

#### a. Authentication of Signatures

Defendant maintains that each named Plaintiff electronically signed a valid MAA upon initiating his or her employment with Defendant. (MTC at 1). To demonstrate that each Plaintiff signed a MAA, Defendant points to the Declaration of Kimberly Warren, ("Warren Decl.," Doc. No. 18-5), and to Exhibit D, which includes copies of the MAA that were allegedly signed by each Plaintiff, (Warren Decl., Ex. D). (MTC at 1-2).

Plaintiffs do not actually claim that they did not sign the MAA. Instead, Plaintiffs contend that Defendant has failed to properly authenticate the electronic signature of each named Plaintiff on his or her respective MAA. (MTC Opp'n at 9).

Federal Rule of Evidence 901(a) instructs that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." For example, "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" may be used for the purpose of authentication. See Fed. R. Evid. 901(b)(4).

In her Declaration, Warren, a Human Resources associate Supervisor for Defendant, explains that each Plaintiff was required to submit an application through Defendant's online portal when they were hired. (Warren Decl. ¶¶ 1-2). She attests to her familiarity with the "onboarding process for new sales representatives, including monitoring their completion and acknowledgment of online forms," as well as with "the electronic records which document a sales representative's completion of the onboarding process." (Id. ¶ 1). She explains that Defendant uses an "online portal" from an outside vendor, Enwisen, to conduct to onboarding process. (Id.). Warren then explains the process through which new sales representatives

electronically sign the MAA. (Id. ¶¶ 1-10). First, the prospective sales representative provides an email address to Defendant, which then emails to the sales representative a link to the online portal as well as a username and temporary password. (Id. ¶ 2). Upon logging in to the portal, the sales representative creates a new password, which he or she must use to access the online forms, including the MAA. (Id.).

Warren explains that, after accessing the online portal, the sales representative completes various forms until reaching the MAA. (Id. ¶ 5). The sales representative must then type "his or her name in an empty text box next to the words 'Employee Signature.'" (Id.). The sales representative cannot progress to the remaining forms without typing his or her name onto the form. (Id. ¶ 6). Warren attests that the portal then generates a copy of the electronically signed form, which the sales representative may save, and which is archived for Defendant's later use; Defendant has continuous access to the forms. (Id. ¶¶ 6-7). The online portal automatically populates the date onto the form and records the date on a separate list. (Id. ¶¶ 6, 9). Along with her Declaration, Warren provides "true hard copies of the [MAAs] executed by [Plaintiffs][,] which [Warren] retrieved from [Defendant's] online onboarding portal." (Id. ¶ 8).

In Jones-Mixon v. Bloomingdale's, Inc., No. 14-cv-01103-JCS, 2014 WL 2736020, at *4 (N.D. Cal. June 11, 2014), the court relied on similar evidence when rejecting the plaintiff's objection to the authenticity of an agreement that she had allegedly signed electronically. In rejecting that authenticity argument, the court looked to a declaration from the director of employee relations, to which copies of the agreement were attached, and in which she attested that she was the custodian for all such records and had personally reviewed the plaintiff's records to determine that she had returned her electronically signed form. Id. The Warren Declaration provides at least as much support for the authenticity of the electronically signed agreements as was provided in Jones-Mixon.[4] Accordingly, Defendant has properly authenticated Plaintiffs' MAAs.

### b. Agreement to Arbitrate PAGA Claims

Plaintiffs argue that an employee cannot waive, via an arbitration agreement, his or her right to bring a representative PAGA claim. (MTC Opp'n at 7). Thus they contend that the MAA is unenforceable to the extent that it waived Plaintiffs' right to bring any such PAGA action. (Id. at 8). Based on that reasoning, Plaintiffs assert that their representative PAGA claims cannot be referred to arbitration and should instead be litigated in federal court. (Id.).

The Supreme Court has explained that, "when a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to 'compel arbitration of pendant arbitrable claims when one of the parties files a motion to compel, even where the result would be the

---

[4] Moreover, in addition to providing electronically signed MAAs, Defendant also supports its assertion that Plaintiffs agreed to arbitrate their disputes by pointing to the fact that the MAA provides Plaintiffs with an opportunity to opt out of agreeing to arbitration "by delivering, within 15 days of the date this Agreement is provided to Sales Rep, a completed and signed Opt-Out Form to the Company's Vice President of Human Resources." (Warren Decl., Ex. D, ¶ 10). Plaintiffs do not claim that they attempted to opt out of the arbitration agreement.

possibly inefficient maintenance of separate proceedings in different forums." KPMG LLP v. Cocchi, 132 S. Ct. 23, at 26 (2011). Thus, even if Plaintiffs' PAGA claims could not be arbitrated, Plaintiffs' remaining claims would nonetheless proceed to arbitration. Such bifurcation is not necessary, however, because arbitration of Plaintiffs' PAGA claims is mandated by the FAA.

Plaintiffs base their argument for the inability to waive representative PAGA claims on the recent California Supreme Court decision in Iskanian v. CLS Transp. L.A., LLC, 327 P.3d 129 (Cal. 2014). There, the court "conclude[d] that where . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." Id. at 384. In reaching that conclusion, the court explained that "[t]he government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit." Id. at 382. The court determined that an employee could not waive the government's right to enforce the Labor Code via representative PAGA claims and concluded that waivers of PAGA representative claims are therefore unconscionable. See id. Moreover, according to the California Supreme Court, that rule against waiving representative PAGA claims is not preempted by the FAA. See id. at 384-85.

Although California courts control the interpretation of California statutes, such as PAGA, the role of interpreting federal statutes, like the FAA, is left to federal courts. See, e.g AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1753 (2013) (holding that California's rule requiring availability of classwide arbitration is preempted by FAA). Thus this Court need not defer to the California Supreme Court's conclusion that the FAA does not preempt its rule that arbitration agreements are unconscionable if they waive an employee's right to bring a representative PAGA claim.

The FAA preempts certain rules that classify some arbitration agreements as unconscionable. See Concepcion, 131 S. Ct. at 1746. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus arbitration agreements may "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S. Ct. at 1746. However, even "a doctrine normally thought to be generally applicable, such as duress or . . . unconscionability" can be impermissibly "applied in a fashion that disfavors arbitration." See id. at 1747.

The California Supreme Court's rule against representative PAGA claim waivers treats arbitration agreements disfavorably. While concluding that an employee's agreement not to bring a representative PAGA action is contrary to public policy if it takes place before any dispute arises, the court nevertheless explained that, after a labor dispute arises, an employee is free to choose not to bring a representative PAGA claim. See Iskanian, 327 P.3d at 383. Moreover, after a dispute arises, an employee may agree to "resolve a representative PAGA claim through arbitration." Id. at 391. Thus, although the court asserts that the basis for holding representative PAGA claim waivers unconscionable is that an employee cannot waive a right that properly belongs to the government, the court nevertheless acknowledges that an employee

may actually sometimes waive the government's right to bring a PAGA claim.  See id.  That inconsistency illuminates the fact that, it is not an individual's ability to waive the government's right that drives the court's rule, but rather the court's general disfavor for pre-existing agreements to arbitrate such claims individually.

Plaintiffs, like the Iskanian court, analogize to the U.S Supreme Court's decision in EEOC v. Waffle House, Inc., 534 U.S. 279 (2002), in support of their assertion that an individual cannot waive the government's interest in litigating PAGA claims.  In Waffle House, the U.S. Supreme Court held than an employee's arbitration agreement could not prevent the EEOC from bringing suit against the employer for labor law violations with respect to the employee.  Id. at 294.  However, the EEOC suits at issue in Waffle House are distinguishable from agreements to arbitrate PAGA claims on an individual basis.  In EEOC suits, the EEOC brings and controls the litigation, whereas, in PAGA claims, the employee is the named plaintiff and controls the litigation.  See Fardig v. Hobby Lobby Stores, Inc., No. SACV 14-00561 JVS, 2014 WL 4782618, at *4 (C.D. Cal. Aug. 11, 2014).

Two district courts have addressed the enforceability of representative PAGA action waivers following the Iskanian decision, and both have concluded that California's rule against such waivers is preempted by the FAA.  See Ortiz v. Hobby Lobby Stores, Inc., No. 2:13-cv-01619, 2014 WL 4691126, at *11 (E.D. Cal. Oct. 1, 2014); Fardig, 2014 WL 4782618, at *4.  This Court similarly concludes that the FAA preempts California's rule against arbitration agreements that waive an employee's right to bring representative PAGA claims.  Therefore, the Court holds that the MAA is enforceable with regard to all of Plaintiffs' claims, including their PAGA claims.[5]

### 3. Agreement Encompasses Disputes at Issue

If a movant successfully demonstrates the existence of a valid arbitration agreement, a court must compel arbitration as long as the movant also demonstrates that the arbitration agreement encompasses the dispute at issue in the litigation.  See Cox, 533 F.3d at 1119.

The MAA includes broad language, indicating Defendant's and Plaintiffs' agreement that "all dispute and claims between them, including those relating to Sales Rep's relationship with the Company and any termination thereof, and including claims by Sales Rep against [Defendant] . . . shall be determined exclusively by final and binding arbitration."  (Warren Decl., Ex. D, ¶ 1).  The MAA further provides that "[c]laims subject to arbitration under this Agreement include without limitation claims for breach of any express or implied contract; discrimination, harassment, or retaliation; wages, overtime, benefits, or other compensation; violation of public policy; personal injury; and tort claims including defamation, fraud, and emotional distress."  (Id.).

---

[5] Moreover, Plaintiffs appear not to have complied with the procedural requirements of Cal. Labor Code § 2699.3 before bringing their PAGA claims, and thus those claims may not have been properly pleaded.  Defendant, however, has not raised that issue to the Court.

The MAA clearly encompasses each of Plaintiffs' claims. Plaintiffs assert various employment-related claims, including those for (i) unpaid wages, (ii) improper wage deductions, (iii) failure to pay Plaintiffs for waiting time, (iv) inaccurate wage statements, (v) misclassification of employees, (vi) demands for reimbursement for work expenditures, (vii) failure to provide meal and rest breaks, (viii) and unfair competition.

Because Defendant has successfully demonstrated that a valid, arbitration agreement encompasses the dispute at issue, Defendant has satisfied its burden, pursuant to the FAA, of demonstrating that arbitration is appropriate. See Cox, 533 F.3d at 1119. Therefore, the Court GRANTS Defendant's Motion to Compel Arbitration.

### 4. Request for Stay Pending Arbitration

Defendant seeks a stay of the action pending arbitration or dismissal of the entire action. (Mot. to Compel, at 17). The FAA provides that when a court is satisfied that issues involved in a lawsuit are referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, the FAA "requires that the court stay judicial proceedings until the matter has been arbitrated according to the terms of the arbitration agreement." Leicht v. Bateman Eichler, Hill Richards, Inc., 848 F.2d 130, 133 (9th Cir. 1988). Because the Court finds that arbitration is warranted, the Court GRANTS Defendant's request and STAYS this action pending arbitration.

## IV.    MOTION TO TRANSFER VENUE

In deciding Defendant's Motion to Compel Arbitration, the Court has compelled arbitration with regard to all of Plaintiffs' currently existing claims. Therefore, the Motion to Transfer Venue is DENIED AS MOOT.

## V.    CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Plaintiffs' Motion to Remand;
(2) GRANTS Defendant's Motion to Compel Arbitration
(3) STAYS this action, pending arbitration. The Parties are ORDERED to file a joint status report every 60 days, with the first joint report due December 15, 2014. The joint status report should inform the Court of any developments in the arbitration proceedings. The Parties are further ORDERED to notify the Court immediately if a final resolution of the claims in this action is reached in arbitration. The Parties may request a status conference to discuss lifting the stay with the Court, if necessary;
(4) DENIES AS MOOT Defendant's Motion to Transfer Venue; and
(5) VACATES the October 20, 2014, hearing.

**IT IS SO ORDERED.**